# In the United States Court of Federal Claims

No. 10-859C
(Filed: September 25, 2015)

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                    *
MICHAEL STUART,                     *     Military Discharge; Incomplete
                                    *     Administrative      Record;
                                    *     Completion of Administrative
            Plaintiff,              *     Record;        Authentication;
                                    *     Vacatur of Decisions Predicated
    v.                              *     on Incomplete Administrative
                                    *     Record; Remand.
THE UNITED STATES,                  *
                                    *
            Defendant.              *
                                    *
                                    *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

Jason E. Perry, 10540 Galleria Street, Wellington, Florida 33414, for Plaintiff.

Joyce Branda, Robert E. Kirschman, Jr., Martin F. Hockey, Jr., and Jessica R. Toplin, United States Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant.

_____

**MEMORANDUM OPINION AND ORDER**
_____

**WILLIAMS**, Judge.

This matter comes before the Court on Defendant's motion for leave to correct the Administrative Record ("AR"). Also pending are the parties' cross-motions for judgment on the AR following the decision of the Army Board for Correction of Military Records ("ABCMR") on remand and Plaintiff's motion for sanctions. In light of new documents submitted to the Court, the Court grants Defendant's motion for leave to correct the AR, remands this matter to the ABCMR, and stays proceedings pending the Board's decision until further order of the Court. Because the Court's January 30, 2013 Opinion was predicated on an incomplete record and an erroneous factual predicate, that decision is vacated.

## Background

Plaintiff, Sergeant Michael E. Stuart, claims that he became disabled while serving in the United States Army and that, instead of being separated in January 2006, he should have been

maintained on active duty until the Secretary of the Army rendered a final decision on his physical disability claim. Compl. 5-6. Plaintiff seeks back pay, payment for medical care since his removal from active duty, and restoration to active duty until he is afforded a medical evaluation. Id. at 6. This Court previously found that the Army failed to follow its procedures regarding post-deployment medical assessments, to brief Sgt. Stuart about his medical benefits and entitlements and to document his medical treatment. Stuart v. United States, 108 Fed. Cl. 458, 461 (2013). The Court directed the ABCMR to reassess Plaintiff's separation from active duty and determine whether he should have been discharged due to medical disability in accordance with the Army's regulations or referred to a Medical Evaluation Board ("MEB") and potentially a Physical Evaluation Board ("PEB"). Id. at 472-73.

In issuing the Remand Order, the Court relied upon the Army's "Personnel Policy Guidance" ("PPG") containing the Army's procedures for overseeing its soldiers in effect when Sgt. Stuart was discharged in January 2006. Id. at 465-66. Part 7-12, which set forth the requirements for medical procedures during Release from Active Duty or "REFRAD," provided, in pertinent part:

> 7-12 Requirements for REFRAD [Release from Active Duty]/Demobilization.
>
> a. Medical Benefits and Entitlements Briefing: Each Soldier will receive a medical benefits and entitlements briefing. Briefing information should include, but is not limited to, the following topics:
> • The right to request a REFRAD physical.
> • MRP [Medical Retention Processing]
> • Tricare benefits following REFRAD.
> • Points of contact for TRICARE claim issues.
> • Department of Veterans Affairs (VA) access.
> • Two forms must be completed: Department of Defense (DD Form 2796, Post-deployment health assessment to be completed within 5 days of redeployment or demobilization, and DD Form 2697, Report of medical assessment).
> • TRICARE Reserve Select (TRS)

Id. (emphasis added).

Paragraph 7-8(b) of the PPG required that Department of Defense DD Form 2796, Post-Deployment Health Assessment, be completed "in the theater of operation prior to redeployment, ideally within 5-days but nor more than 30-days, before departure from theater." Id. at 466 (quoting PPG ¶ 7-8(b)). The PPG further mandated that the original DD Forms 2795 (Pre-Deployment Health Assessment), 2796 and 2697 (Report of Medical Assessment), as well as any completed Department of the Army DA Form 2173 (Statement of Medical Examination and Duty Status) were to be placed in the soldier's health record. Id.

Relying in part on the PPG, the Court held:

2

>The Army did not comply with its procedures when it released Sgt. Stuart from active duty and failed to conduct a Post-Deployment Health Reassessment,[1] to document medical treatment provided during his tour of duty, to inform Plaintiff of his right to request a physical examination, and to determine if Plaintiff needed to be referred to a Medical Evaluation Board.

Id. at 472.

On remand, the ABCMR concluded that there was no evidence that Plaintiff had a medical condition at the time of his release from active duty that warranted either his entry into the Army Physical Disability Evaluation System or referral to an MEB prior to discharge. Supp. AR 308. The ABCMR determined that the Army properly discharged Plaintiff from active duty, and without referring him to an MEB, denied Plaintiff's application to correct his military record. Id. at 308-9. In reaching its conclusions, the ABCMR relied in part upon a January 3, 2006 DD Form 2697 that had not been part of this Court's record. Compare id. at 296, 303-6, with Order at 1 (Dec. 4, 2014). The ABCMR pointed out that the Court did not cite this document in its opinion and Remand Order, and indicated that this new document, DD Form 2697, showed that Plaintiff underwent a Post-Deployment Health Assessment on January 3, 2006, within the required timeframe. Supp. AR 306. However, DD Form 2697 is not the Post-Deployment Health Assessment – it is a report of medical assessment. See id. at 344. A similarly numbered form, the DD Form 2796, is the Post-Deployment Health Assessment. Adams Decl. ¶ 6 (Feb. 4, 2015) ("The DD Form 2697 is a report of a comprehensive medical assessment, to be used 'to provide a comprehensive medical assessment for active and reserve component service members separating or retiring from active duty.'") (internal citations omitted).

Neither Sgt. Stuart's DD Form 2697 nor his DD Form 2796 was included in the original AR, dated October 20, 2011, and were not before the Court when it entered its January 30, 2013 decision. See Order (Dec. 4, 2014). Nor did the parties rely upon these documents when they presented their motions for judgment and arguments to the Court. See Def.'s Mot. for J. on the AR; Pl.'s Cross Mot. for J. on the AR. The ABCMR in its decision listed DD Form 2697 as among those documents provided by Plaintiff following remand. Supp. AR 292. The DD Form 2697 was filed with the Court for the first time on September 16, 2013, after the ABCMR's determination, as part of Defendant's supplemental AR. Id. at 344.

Noting that DD Form 2697 had not been in the original AR and had not been referenced by either party in its motions that resulted in the Remand Order, in a September 30, 2014 Order, the Court ordered Defendant to file a declaration explaining why the January 3, 2006 DD Form 2697 had not been provided as part of the original AR. Order (Sept. 30, 2014). On November 3, 2014, Defendant filed a declaration of Kenneth A. Clayton, a paralegal specialist with the Litigation Division, Military Personnel Branch for the United States Army, Legal Services Agency. Notice (Nov. 3, 2014). Mr. Clayton stated that Army records are maintained at:

---

[1] The Court referred to the Post-Deployment Health Assessment as the Post-Deployment Health Reassessment in the Remand Order.

(1) the U.S. Army Human Resource Command ("Army HRC") and (2) the National Personnel Records Center; (3) the Department of Veterans Affairs ("VA") Records Management Center for medical records and VA Regional Offices after filing for disability benefits.

Clayton Decl. ¶ 3 (Oct. 30, 2014). Mr. Clayton testified that he requested and received documents from the Army HRC and the VA when preparing the original AR but that he "would be speculating as to why the DD Form 2697 was not included as part of the documents received from either [the Army] HRC or the VA." Id. ¶¶ 4-5. Mr. Clayton further testified:

> Although Mr. Stuart possessed a copy of the DD Form 2697, ALARACT - Message 023/2002, Subject: Pre and Post Deployment Health Assessments (P/PDHA) Priority, directed that the original be filed in the soldier's health records. Health records are maintained separately and maintained at the soldier's regional VA office. At the time of the original request, HRC did not have the DD Form 2697 scanned into Mr. Stuart's personnel file, which was provided to me. Moreover, it was not included in the index maintained by HRC, and I, therefore, had no knowledge regarding this form's existence. Further, the DD Form 2697 was not included in the medical records received from the VA.

Id. ¶ 6. Mr. Clayton did not indicate when he made "the original request." Id.

The supplemental AR contained another group of documents missing from the original AR -- Sgt. Stuart's Medical Extension Processing 2 ("MRP2") Packet, dated May 11, 2007. Supp. AR 322-28. The first page of this packet is a "Medical Extension Processing 2 (MRP2) Initial Packet Checklist." Id. at 322 (emphasis in original). This checklist was completed by SFC Dennis Adams, Unit Readiness NCO, and listed a number of documents apparently to be checked off if included in the MRP2 packet and four additional documents to be checked off "if available." Id. SFC Adams checked off DD Form 2796, Post-Deployment Health Assessment. Id. However, a DD Form 2796 for Sgt. Stuart was not submitted along with other documents in the packet and was not in the supplemental AR. Id. at 322-28; see also Adams Decl. ¶ 6 (Feb. 5, 2015). All other documents checked off on the MRP2 Checklist were in the supplemental AR.

On December 4, 2014, the Court directed the parties to clarify the record with respect to Sgt. Stuart's MRP2 Packet. Order (Dec. 4, 2014). The Court ordered Defendant to file declarations explaining what a check mark on the MRP2 Initial Checklist signified, why SFC Adams checked off DD Form 2796, where the DD Form 2796 would have been maintained in the ordinary course of business, and whether this repository was a source of documents for the AR and/or the supplemental AR. Id. The Court also ordered Defendant to file a declaration specifying when documents were requested from the HRC and VA or any other repository for purposes of this action and whether a DD Form 2796 was in Sgt. Stuart's personnel file or medical records at that time. Id. The Court ordered Plaintiff to file a declaration stating whether he ever possessed his DD Form 2796 and to file the form if he possessed it. Id. Finally, the Court ordered both parties to file any decision responding to Sgt. Stuart's request for MRP2 status. Id.

On January 14, 2015, Plaintiff responded to the Court's December 4, 2014 Order. Stuart Decl. (Jan. 14, 2015). In his declaration, Plaintiff stated that he has never possessed a copy of DD Form 2796, does not recall seeing such form, and believes "no such DD Form 2796 was ever filled out for [him] at any time." Stuart Decl. at 1 (Jan. 8, 2015). He also stated that he never received any response regarding his application for return to active duty under the MRP2 program. Id.

On February 5, 2015, the Government filed several declarations in response to the Court's December 4, 2014 Order. Notice (Feb. 5, 2015) (containing declarations of Master Sergeant Dennis Adams, Chief of the Army Medical Records Program Bryan K. Burrell, and a second declaration of paralegal specialist Kenneth A. Clayton). Master Sergeant Dennis Adams described how he located two DD Form 2796s for Sgt. Stuart, and attached them as Exhibit 1 to his declaration. Adams Decl. ¶ 7, Exh. 1. The two DD Forms 2796 are dated December 12, 2005, and January 3, 2006, the same day the DD Form 2697 was completed. Id. Master Sergeant Adams, who completed Sgt. Stuart's MRP2 Packet, testified that under standard operating procedures, he was to "start with a blank MRP2 checklist, place a checkmark on the blank line to the left of the required document for the packet as the required document/form was included in the packet for submission to higher headquarters." Id. ¶ 3. Thus, "[a] checkmark has no other value at the unit level other than to verify the packet was complete and ready for submission." Id.

> Master Sergeant Adams further testified:
>
> After being contacted about the MRP2 packet that was submitted in Mr. Stuart's pending case, I reviewed the original MRP2 packet and realized that I must have mistaken the DD Form 2697 for the DD Form 2796 and that a "no" should have been placed on the checklist instead of a checkmark. Mr. Stuart's MRP2 packet did not include a DD Form 2796.
>
> The DD Form 2697 is a report of a comprehensive medical assessment, to be used "to provide a comprehensive medical assessment for active and reserve component service members separating or retiring from active duty." In place of the DD Form 2796, the DD Form 2697 was submitted as part of the packet. There is no record of the DD Form 2796 in Mr. Stuart's MRP2 packet.
>
> After discovering, on 12 January 2015, the MRP2 packet did not contain the DD Form 2796, I inquired with my personnel section at Battalion, SSG Greg Blaylock. He contacted SSG William Cox in the MEDCOM section at Joint Forces Headquarters in Jackson, Mississippi where the records are maintained. SSG Cox researched and found two DD Forms 2796; SSG Cox sent the forms to SSG Blaylock, which in return, I forwarded the forms to Army Litigation Division. See DD Forms 2796, attached as Exhibit 1.

Id. ¶¶ 5-7.

The Government did not explain why no agency personnel originally searched the MEDCOM section at Joint Forces Headquarters in Jackson, Mississippi, "where the records are maintained." Id. ¶ 7. Master Sergeant Adams did not elaborate on what records are maintained in Jackson, Mississippi or why this repository was not previously searched. Id. The certification of the original AR states that "Copies of Medical Records are maintained at the Mississippi Veterans Affairs Regional Office, Jackson, Mississippi." See AR (containing a certification authenticating the AR signed by Susan B. Sutherland, Lieutenant Colonel, U.S Army Chief of the Military Personnel Litigation Branch, dated Sept. 30, 2011).

The Government also submitted the declaration of Bryan K. Burrell, the Chief of the Army Medical Records Program for the Office of the Surgeon General. Notice, Attach. 1 at 12-13, (Feb. 5, 2015). Mr. Burrell is responsible "for the regulations and executive oversight of medical records administration for the Army." Burrell Decl. ¶ 1 (Feb. 4, 2015). Mr. Burrell testified that under Army Regulation 40-66, in force at the time, a soldier's health records would not accompany him or her to a combat zone, but "the DD Form 2766 folder [would] serve as the treatment folder while the individual is deployed. The medical treatment facility in the soldier's area of operation will maintain the DD Form 2766 as an outpatient field file." Id. ¶¶ 4-5. This "field file" contained a number of forms, including DD Form 2796. Id. ¶ 5.

Mr. Burrell further testified:

> The DD Form 2796 would be completed and placed on the inside flap of the DD Form 2766 folder. Once a soldier returned from their deployment, the DD Form 2796 and all other forms filed inside the DD Form 2766 folder would be filed in the soldier's regular treatment records. The soldier's regular treatment records are their official medical records.
>
> The DD Form 2796, Post Deployment Health Assessment, in the ordinary course would therefore have been completed, placed in the soldier's DD Form 2766 folder while deployed, and filed in the soldier's official medical record upon return from deployment.

Id. ¶¶ 6-7. Nothing in the AR is labelled "Form 2766." Mr. Burrell describes Form 2766 as the "Adult Preventive and Chronic Care Flowsheet," but there is nothing in the AR with that title. Id. ¶ 5. Form 2766 is not on the list of documents considered by the ABCMR. Supp. AR 292.

Mr. Clayton testified that he requested Sgt. Stuart's personnel records from HRC on December 28, 2010, and did not request records from NPRC because "NPRC records are for those Soldiers who served in the Army before 2003." Second Clayton Decl. ¶ 4 (Feb. 5, 2015). "Mr. Stuart was a member of the Active Army after January 2003 and, therefore none of Mr. Stuart's files are maintained at NPRC." Id. Mr. Clayton received Sgt. Stuart's personnel documents from HRC on December 28, 2010, and stated that Sgt. Stuart's records "are maintained electronically in the Personnel Electronic Records Management System (iPERMS) by HRC." Id. Mr. Clayton testified that he also requested Sgt. Stuart's medical records from the VA on December 28, 2010, because "[u]pon discharge, a soldier's health record (HREC) will be forwarded to the VA" and "[t]he VA is the repository for the official medical records identified

6

by Mr. Burrell as the location where the DD Form 2796 would have been maintained in the ordinary course of business." Id. at ¶5. The DD Form 2796 "was not provided" to Mr. Clayton "from HRC or the VA." Id. at ¶ 7.

On February 20, 2015, the Court held a status conference, and Plaintiff raised two issues regarding the authenticity of the two Forms 2796. Plaintiff asked how it was possible that while the forms were dated December 2005 and January 2006, they contained supplemental questions added on November 3, 2007. Plaintiff also inquired why the Forms 2796 were not maintained in the repository that Mr. Burrell described as "where the Form 2796 would have been maintained in the ordinary course of business." Tr. 2-3. Following the status conference, the Court ordered Defendant to file a notice attaching a sworn declaration of SSG William Cox describing what steps he took to locate Sgt. Stuart's DD Form 2796 and why he looked for this form in "the MEDCOM section at Joint Forces Headquarters in Jackson, Mississippi," and a declaration or declarations addressing the authenticity of the two DD Form 2796s and why they contained supplemental questions added November 3, 2007. Order (Feb. 20, 2015). Defendant filed a second declaration of SSG William Cox on March 13, 2015, which detailed his location of Sgt. Stuart's two DD Form 2796s and addressed the Court's questions. Notice, Attach. 1 (Mar. 13, 2015) ("Second Cox declaration"). SSG Cox testified:

> On January 12, 2015, SSG Gregory Blaylock contacted me asking who the current point of contact ("POC") was for MSARNG medical records. I told SSG Blaylock that I was the POC at which time he advised me that he was looking for a DD Form 2796, Post Deployment assessments for Mr. Michael Stuart to complete a medical packet.
>
> I conducted a thorough search of the MSARNG Medical Records vault and office on January 12, 2015. I did not find a hard copy record or documentation of a DD Form 2796 for Mr. Stuart. I also searched Mr. Stuart's online Health Readiness Record (HRR) and did not find a DD Form 2796 for Mr. Stuart. The HRR is one of the contacted providers that holds the electronic copies of a service member's medical records – and the only one which the VA has access [sic]. The DD Form 2796 is normally filed in the HRR and the soldier's medical records, but was not.
>
> Finally, I searched MEDPROS, Force Health Protection, Medical Health Assessments ("MHA"), and located two DD Forms 2796 (dated December 12, 2005 and January 3, 2006), Post Deployment Health Assessments, online. I searched in this database, as the local unit does not have access to it – it is restricted due to the protected health information contained therein.

Second Cox Decl. ¶¶ 5-6 (Mar. 13, 2015).

SSG Cox also responded to the Court's inquiry about the November 3, 2007 Supplemental Questions:

> The DD Forms 2796, Post Deployment Assessments provided to SSG Gregory Blaylock for Mr. Stuart were produced directly from the MHA website, which is a part of the MEDPROS website. On January 12, 2015, I emailed SSG Blaylock

7

> the DD Form 2796 Mr. Stuart completed on December 12, 2005 and the DD Form 2796 Mr. Stuart completed on January 3, 2006. Mr. Stuart and the medical provider verified, reviewed, and completed the DD Forms 2976s on the dates they were signed. Each DD Form 2796 is marked "completed" in green lettering in the MHA website. The data is digitally stored and only printed when needed.
>
> Because the format for the DD Form 2796 was updated on November 3, 2007, this date will populate at the bottom of page three above the Supplemental Injury Questions S1 and S2 as "Supplemental Injury Questions (Added 3 November 2007)" when printed. Questions S1 and S2 were not asked to Mr. Stuart because the DD Form was completed by him prior to the revision of the form that occurred on November 3, 2007.

Id. ¶ 7.

SSG Cox provided the DD Form 2796s to SSG Blaylock on the same day of his request. Id. ¶¶ 5, 7. On or about March 10, 2015, Sgt. Stuart's HRR was updated with all of his forms from MHA, including two DD Form 2796s, two DD Form 2795 Pre-Deployment Health assessments (December 15, 2004 and August 31, 2004), and one DD Form 2900 Post-Deployment Health Reassessment (December 4, 2006). Id. ¶ 6. According to SSG Cox, medical records are not automatically sent to the VA, but must be requested, and no record in the MSRANG files existed of any request for Mr. Stuart's medical records by the VA. Id. ¶ 8. On March 13, 2015, Defendant filed the instant motion for leave to correct the AR by adding the December 12, 2005 DD Form 2796 and the January 3, 2006 DD Form 2796. Def.'s Mot. at 1. Plaintiff opposed Defendant's motion on March 21, 2015, arguing that Defendant has failed to show that the "omission of the forms would preclude meaningful review," and "the records proffered are unreliable and have not been properly authenticated." Pl.'s Resp. at 1.

On June 4, 2015, the Court, in response to Plaintiff's arguments, ordered Defendant to authenticate the DD Form 2796s. Order (June 4, 2015). On June 18, 2015, Defendant filed the declaration of Audrey L. Luken, the MEDPROS Program Manager for the MEDPROS Program Office, G37 Medical Readiness Division, G3/5/7 Health Care Operations, U.S. Army Medical Command, Fort Sam Houston, Texas. Decl. of Audrey Luken ¶ 1 (June 11, 2015). Ms. Luken is responsible for managing the "day to day operation of the Army's medical readiness tracking system" and has worked with the MEDPROS database since 2002. Id. As stated by Ms. Luken:

> MEDPROS is a web-based system developed by the Army Medical Department ("AMEDD") to track all immunization, medical readiness, and deployability data for all soldiers and Department of the Army civilians. [. . .] Beginning in 2005, all [Post-Deployment Health Assessments] were required to be completed in an electronic format. The Army designated the MEDPROS system for this task.

Id. ¶ 3. Ms. Luken testified that access to the MEDPROS system is limited to individuals with official duties requiring such access. Id. ¶ 4.

8

Ms. Luken accessed the MEDPROS database and determined that the print-outs of Sgt. Stuart's DD Form 2796s provided to the Court were the same forms located in the MEDPROS system and that the MEDPROS system did not contain any other DD Form 2796 for Sgt. Stuart. Id. ¶ 9.  Ms. Luken stated that Part II of a DD Form 2796, which contains all health information unrelated to a soldier's demographics, must be filled out during a meeting between the soldier and a credentialed health care provider, and, after this interview is completed, the provider electronically signs the form using a personal identification number and his or her "U.S Government Common Access Card." Id. ¶¶ 5-7.  Ms. Luken testified:

> During the 2005-2006 timeframe, the MEDPROS system would show that DD Form 2796 was signed by a provider by placing the last four digits of the provider's social security number in the signature box when the providers signed the form with the [U.S. Government Common Access Card.] The social security number is read from the data on the [U.S. Government Common Access Card.] The signature block also records the date that the document is signed. Only credentialed health care providers are authorized to complete and sign DD Forms 2796.

Id. ¶ 7.

Ms. Luken continued that once a DD Form 2796 is signed by the provider, the data cannot be modified and if a provider wants to make changes to a submitted form, this action will generate a new DD Form 2796, with both the old and new form remaining in the MEDPROS system. Id. ¶ 8. Ms. Luken concluded:

> Mr. Stuart's [Post-Deployment Health Assessments] as indicated on the DD Forms 2796 were electronically completed in the MEDPROS database, that they were completed by a medical provider, and that the forms had not been modified or altered since their completion on December 12, 2005, and January 3, 2006. The DD Forms 2796 that were provided to the Court were true and accurate copies of Mr. Stuart's [Post-Deployment Health Assessments] that were digitally stored in MEDPROS.

Id. ¶ 9. The "Supplemental Questions," which contain the text "Added 3 November 2007," were generated automatically when the DD Forms 2796 were printed on January 12, 2015. Second Cox Decl. ¶ 7.  The addition of the phrase "Added 3 November 2007" indicates that the format of Form 2796 has changed since Plaintiff and Plaintiff's medical providers completed Plaintiff's December 12, 2005 and January 3, 2006 Forms 2796. Id. The two supplemental questions are:

> S1. While deployed, were you exposed to or near a blast, IED explosion, car bomb, suicide explosion, or exposed to any other combat event that caused a blow or jolt to your head?
> S2. While deployed, were you involved in a motor vehicle accident, a fall, a sports accident, or any other event that caused a blow to your head or neck whiplash?

Adams Decl. Ex. 1. The drop-down field to the right of each question is blank on Plaintiff's forms, since these questions were not available for Plaintiff to answer at the time that his forms were completed. The supplemental questions and the corresponding answer fields were generated when SSG Blaylock printed a copy of Plaintiff's electronic forms. Second Cox Decl. ¶7 (Mar. 13, 2015).

## Discussion

### Correction of the Administrative Record

In seeking leave to correct the AR, Defendant asserts that the AR should not be supplemented, but instead should be corrected "to include documents that should have been maintained in [P]laintiff's Health Readiness Records at separation . . . ." Def.'s Mot. at n.1. Defendant requests that these materials be included in the AR because "the [AR] as it is currently constituted, is incomplete." Id. at 6. Defendant also argues that these documents "will promote effective judicial review because they definitively establish that the Army properly screened and evaluated Mr. Stuart upon his release from active duty" and provide further support for the ABCMR's findings. Id.

In opposition, Plaintiff argues that "correction" or "completion" is not the proper way to add these forms to the AR because they were not part of the record originally considered by the ABCMR and did not serve as a basis for its decision. Pl.'s Resp. at 3-4. Plaintiff asserts that these documents are not necessary for effective judicial review and that they should not be added to the AR because "their authenticity is suspect." Id. at 3-8.

When the Court decides a motion for judgment on the AR, judicial review is limited to the administrative record already in existence. See generally Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1379 (Fed. Cir. 2009) (quoting Camp v. Pitts, 411 U.S. 138, 142 (1973)). There is a "strong, but rebuttable, presumption that the administrators of the military, like other public officers, discharge their duties correctly, lawfully and in good faith." Porter v. United States, 163 F.3d 1304, 1316 (Fed. Cir. 1998) (citations and internal quotation marks omitted). As such, to successfully challenge a decision by the ABCMR, a plaintiff must prove by "cogent and clearly convincing evidence" that the decision is arbitrary, capricious, unsupported by substantial evidence, or contrary to applicable statutes and regulations. Arens v. United States, 969 F.2d 1034, 1037 (Fed. Cir. 1992) (citations omitted). However, this deferential standard of review "does not excuse the Board from considering all of the relevant evidence and proffering an explanation that establishes a 'rational connection between the facts found and the choice made.'" Verbeck v. United States, 89 Fed. Cl. 47, 62 (2009) (quoting Bowen v. Am. Hosp. Ass'n, 476 U.S. 610, 626 (1986)).

Defendant correctly acknowledges that Sgt. Stuart's DD Form 2796s were erroneously omitted from the AR and must be added for completeness. Def.'s Mot. at 5-7. As explained in Linc Government Services, LLC v. United States, there is a distinction between materials proffered to "supplement" or to "complete" the AR. 95 Fed. Cl. 155, 158 (2010). This need for completeness arises because an agency's initial submission to the court may omit information that is properly part of the administrative record because it served as a basis for the agency's

decision under review. Id. (citing R. Ct. Fed. Cl. App. C, ¶ 22(o); PlanetSpace, Inc. v. United States, 90 Fed. Cl. 1, 4 (2009)). Unlike Linc however, the two critical documents missing from the AR were not only omitted from the Court's record, they were not before the ABCMR and not relied upon by the parties in their arguments to either tribunal. Plaintiff alleged that he was wrongfully separated without referral into the Army's physical disability evaluation system. Compl. 3, 5. Therefore, all documents relating to his separation from active service, especially those relating to his medical evaluation at that time, should have been included in the original AR. Because Defendant did not include either DD Form 2697[2] or the two DD Form 2796s in the AR, the Court's January 30, 2013 Opinion was predicated on an incomplete record and the erroneous assumption espoused by Defendant, that a Post-Deployment Health Assessment form was never completed.[3] Stuart, 108 Fed. Cl. at 468-9; see also Def.'s Reply to Pl.'s Cross-Mot. for J. on the AR at 2. The Court grants Defendant's motion and orders correction of the AR to add the two DD Form 2796s.

The Court rejects Plaintiff's argument that these documents should not be added to the AR because their authenticity is suspect. Pl.'s Resp. at 5-8. In order to authenticate evidence, "the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). Testimony that an item is what it claims to be is sufficient. Id. at 901(b)(1). The declaration of Ms. Luken, the Program Manager for the Medical Protection System ("MEDPROS"), based on her personal knowledge of the MEDPROS system and how a DD Form 2796 is created, establishes the authenticity of Sgt. Stuart's forms. Luken Decl. ¶¶ 1, 5-10. In her declaration, Ms. Luken stated that she is "required to access and view documents and data contained in MEDPROS" as part of her official duties, and that she accessed and reviewed Plaintiff's MEDPROS entries. Id. ¶¶ 1-2. Ms. Luken stated that she "confirmed that the MEDPROS system contains entries for the same two DD Forms 2796 that [she] reviewed in print-out form," and that there were no other DD Forms 2796 in the system for Plaintiff. Id. at ¶ 2. Ms. Luken stated that once "a DD Form 2796 is signed by the provider in MEDPROS, the data on the form cannot be modified. If a provider wants to make a change . . . the provider can access the data . . ., but then must resign the document . . . ." Id. ¶ 8. Ms. Luken concluded, based on her examination of Plaintiff's entries, the declaration of SSG Cox, and printed copies of the DD Forms 2796, that Plaintiff's forms "were generated from the database information," were "electronically completed in the MEDPROS database," were "completed by a medical provider," and "had not been modified or altered since their completion on December 12, 2005, and January 3, 2006." Id. ¶ 9.

The issue Plaintiff raised about the November 3, 2007 entry on the Forms 2796, while understandable, was satisfactorily resolved with the explanation that the produced version of the forms had been updated but that Mr. Stuart's original forms had not been altered or subsequently changed. Second Cox Decl. ¶ 7. In sum, the declarations of Sgt. Cox and Ms. Luken establish the authenticity of the two DD Forms 2796.

---

[2]   Defendant filed DD Form 2697 for the first time with this Court on September 19, 2013. Supp. AR at 344.

[3]   Plaintiff has filed a motion for sanctions based on the wasted effort of all parties and the Court due to Defendant's failure to include these forms in the AR.

11

**Remand to the ABCMR**

Given the procedural posture of this case and the fact that the omitted DD Form 2796s were not considered by the ABCMR, the Court remands this matter to the ABCMR. As the Supreme Court has explained:

> If the record before the agency does not support the agency action, if the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation. The reviewing court is not generally empowered to conduct a de novo inquiry into the matter being reviewed and to reach its own conclusions based on such an inquiry.

Fla. Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985). Here, this Court is unable to review the challenged determination of the ABCMR because the ABCMR did not have Plaintiff's two DD Form 2796s before it when it reached its decision. These key documents could fundamentally alter the parties' arguments about the legality of Sgt. Stuart's separation, and affect the ABCMR's findings. The Court thus cannot properly evaluate whether the ABCMR's decision resulting from the initial remand order was arbitrary, capricious, contrary to law, or unsupported by substantial evidence.

The Tucker Act gives the Court of Federal Claims the authority "to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just." 28 U.S.C. § 1491(a)(2) (2012); see R. Ct. Fed. Cl. 52.2; accord Harris v. United States, 8 Cl. Ct. 299, 303 (1985). Under Rule 52.2 of the Rules of the Court of Federal Claims, "[a]n order remanding a case must (A) include such direction as the Court deems proper and just; (B) establish the duration of the remand period, not to exceed 6 months; (C) specify the extent to which court proceedings will be stayed during the remand period; and (D) designate a party to report to the court, every 90 days or less, on the status of the remand proceedings. R. Ct. Fed. Cl. 52.2(b)(1).

Remand is appropriate here to afford the ABCMR the opportunity to decide Plaintiff's claims on a complete record, evaluate the impact these additional documents have on its original rationale and findings and revise its decision accordingly. It would be a waste of judicial resources for this Court to review the decision of the ABCMR that Plaintiff is currently challenging, as it was based on an incomplete and inaccurate Administrative Record. Judicial review would necessarily result in a remand in any event because the ABCMR had, through no fault of its own, failed to consider critical documents, the Forms 2796. Fla. Power & Light Co., 470 U.S. at 744. As Plaintiff notes in his motion for sanctions, "the filing of the two DD Form 2796s 'would have likely greatly changed the arguments [P]laintiff raised and the issues before the Court.'" Pl.'s Mot. for Sanctions 7.

## Conclusion

1. Defendant's Motion to Correct the Administrative Record is **GRANTED**. The December 12, 2005 DD Form 2796 and the January 3, 2006 DD Form 2796, appended to the declaration of Sgt. Dennis Adams, are added to the AR. Defendant shall file an addendum to the AR containing these forms with page numbers forthwith, along with an appropriate certification of this portion of the AR.

2. This Court's Opinion and Order of January 30, 2013, as well as the ABCMR's July 18, 2013 Record of Proceedings are **VACATED** as they were predicated upon an incomplete and inaccurate AR and upon erroneous assumptions.

3. Plaintiff's Motion for Judgment on the Administrative Record and Defendant's Cross-Motion for Judgment on the Administrative Record are **DENIED as moot** in light of the correction of the AR, as the motions and supporting papers were predicated on an incomplete and inaccurate AR.

4. The Court **REMANDS** this matter to the Army Board for Correction of Military Records for further administrative action pursuant to Rule 52.2 and orders:

    a. The Army Board for Correction of Military Records is directed to reassess Plaintiff's separation from active duty, based upon the corrected AR, in the manner set forth in Stuart v. United States, 108 Fed. Cl. 458, 472-3 (2013) and determine whether Plaintiff should have been discharged due to medical disability in accordance with the Army's regulations. On remand, the Board shall "provide additional investigation or explanation" based upon the corrected AR, consistent with Florida Power & Light Company v. United States, 740 U.S. at 744.

    b. Defendant shall provide the Court with the Army Board for Correction of Military Records' decision within 180 days of Defendant's filing of the corrected AR.

5. Plaintiff's motion for sanctions is **DENIED in part** insofar as Plaintiff seeks exclusion of the December 12, 2005 DD Form 2796 and the January 3, 2006 DD Form 2796 from the AR, based upon the paramount public interest in having tribunals render decisions based upon a true and accurate record.

6. The case is **STAYED** for all purposes for the duration of remand proceedings, including Plaintiff's motion for sanctions requesting attorney's fees.

s/Mary Ellen Coster Williams  
**MARY ELLEN COSTER WILLIAMS**  
**Judge**